# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 11-cv-02527-DME-KMT

COLORADO CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.

BROCK USA LLC,

      Defendant.

---

## ORDER GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM AND ON TWO OF THREE OF DEFENDANT'S COUNTERCLAIMS

---

This matter comes before the Court on the parties' cross-motions for summary judgment. After considering those motions, as well as the parties' evidence and arguments, the Court DENIES the motion of Defendant Brock USA LLC ("Brock") for Partial Summary Judgment on the Issue of Plaintiff's Duty to Defend and Request for Forthwith Ruling (Doc. 8), and DENIES Brock's Motion for Summary Judgment on two of its three counterclaims (Doc. 49). The Court instead GRANTS Plaintiff Colorado Casualty Insurance Company ("Colorado Casualty")'s Cross-Motion for Summary Judgment (Doc. 68).

# I.   BACKGROUND

## A.   The parties

This is a dispute over whether Plaintiff Colorado Casualty had a duty to defend and indemnify Defendant Brock in connection with a civil action filed against Brock and other defendants in 2006 by the city of Coquitlam, British Columbia (the "City"), in the Supreme Court of British Columbia.  Brock develops, and licenses others to manufacture, a product called "Brock Performance Base" (also referred to as "Brockpad") which is used as underlayment in artificial turf sports fields.  Brock provided this material to a contractor that installed an artificial-turf sports field at a stadium in Coquitlam in 2006.[1] Colorado Casualty provided commercial general liability ("CGL") insurance to Brock from June 16, 2005 to June 16, 2009, pursuant to four sequential year-long policies (the "Policy"[2]).

## B.   Factual background

The City's initial complaint (the "Writ of Summons") alleged as follows:  In 2006 the City undertook to have a new artificial-turf sports field designed and constructed at the Percy Perry Stadium in Coquitlam (the "Project").  The City contracted with Athletica Sport and Recreation Design, Inc. ("Athletica") to plan and design the Project.  Athletica

---

[1] The City of Coquitlam was originally named as a defendant in this suit, but the Court dismissed the City from this action, without prejudice, on Colorado Casualty's motion on December 7, 2011 (Doc. 15).

[2] Although there were four separate CGL policies issued, the parties do not dispute that the four policies were identical in all material respects, and this order simply refers to them collectively as the "Policy."

recommended the use of a "drainage/shockpad base system developed by [Brock] to underlie the artificial turf sports field." Doc. 68-2 at 4-5.  The City contracted with Wilco Landscape Contractors, Ltd., ("Wilco") "for the supply of all equipment, labour, and materials required for the installation of an aggregate base for the artificial turf sports field surface for the Project." Id. at 5.  "Wilco, in turn, contracted with . . . Brock to provide the material for the drainage/shockpad base system to underlie the artificial turf sports field as recommended by Athletica." Id.  As the Project was "nearing completion," however, "it became evident that the artificial turf sports field as designed, constructed, and installed" was unsatisfactory to the City in a variety of ways, including failing to meet various project specifications and, as primarily pertinent here, failing to drain properly such that there was "significant ponding of water on the surface of the artificial turf sports field . . . rendering the field unusable." Id.

On November 28, 2008, the City filed suit against Athletica, Brock, and the other companies involved in the project in the Supreme Court of British Columbia (the "Athletica Action"), claiming negligence, misrepresentation, breach of contract, and breach of statutory duty. Id.  The Athletica Action ultimately involved four successive "complaints" against Brock: (1) the Writ of Summons that commenced the action; (2) an Amended Writ of Summons, which contained more detailed factual allegations; (3) a Further Amended Notice of Civil Claim, and (4) a Second Further Amended Notice of Civil Claim.[3]

---

[3] A note on terminology:  at the time the Athletica Action commenced, a civil action in the Supreme Court of British Columbia was commenced by filing both a "writ of

Brock and the other defendants eventually settled with the City in January 2012. Under the terms of that agreement, the City dismissed its suit against the defendants and, as pertinent here, Brock agreed to pay $157,500 CAD to the City, and to supply it with additional Brockpad material as necessary at a discounted price, to help the City obtain a new field.  It was also agreed that whatever Brockpad material that could be salvaged from the demolition of the old field would be saved and reused in the new field.  Brock defended itself throughout the Athletica Action, despite having first tendered its defense to Colorado Casualty in May 2009.  Throughout the pendency of the Athletica Action, Brock apparently repeatedly sought to have Colorado Casualty defend and indemnify it, but Colorado Casualty did not do so.

## C.      The present litigation

Instead, Colorado Casualty filed this action on September 27, 2011, seeking a declaration that it did not owe a duty to defend or indemnify Brock in the Athletica Action.  Brock answered and counterclaimed, seeking (1) a declaratory judgment that Colorado Casualty owed a duty to defend and indemnify Brock in the Athletica Action; (2) damages for Colorado Casualty's breach of the insurance contract and (3) damages for its bad-faith breach of the insurance contract.

At issue here are the parties' summary judgment motions.  Colorado Casualty and Brock have filed cross-motions for summary judgment on the question of whether

---

summons" and a "statement of claim."  In 2010, however, the Supreme Court of British Columbia amended its civil rules to combine the writ of summons and statement of claim into a single form, the "notice of civil claim."  See Supreme Court Civil Rules, Rule 3-1(1), B.C. Reg. 168/2009 (Can.).

Colorado Casualty had a duty to defend Brock in the Athletica Action and a duty to indemnify Brock for the settlement it paid to settle that action.  Additionally, Brock seeks partial summary judgment on its related counterclaim alleging Colorado Casualty breached the insurance contract by not defending or indemnifying Brock.  Neither party seeks summary judgment on Brock's bad-faith counterclaim.

Additional facts are set forth as they become relevant in the discussion that follows.

## II.    DISCUSSION

### A.    Jurisdiction and venue

Jurisdiction is proper under 28 U.S.C. § 1332.  Brock is a Colorado company with a principal place of business in Boulder, Colorado, and Colorado Casualty is a New Hampshire corporation with a principal place of business in Boston, Massachusetts.  The amount in controversy exceeds $75,000.

Venue is proper in the District of Colorado under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this suit occurred within this district, including the issuance of the insurance policies in question.

### B.    Standard of review

The Court shall grant summary judgment if materials in the record show no genuine dispute as to any fact material to that issue, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In diversity cases such as this, "the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the

ultimate, procedural question whether judgment as a matter of law is appropriate."

Haberman v. The Hartford Ins. Grp., 443 F.3d 1257, 1264 (10th Cir. 2006).  The parties

agree that Colorado substantive law applies.

Under Colorado law, a court construes an insurance policy using general

principles of contract interpretation.  See Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d

1083, 1090 (Colo. 1991).  Unless the parties indicate a contrary intent, a court construes a

policy's language in accordance with the plain meaning of the words used.  See

Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co., 661 F.3d 1272, 1283 (10th Cir.

2011) (applying Colorado law).  The court "must 'interpret a contract in its entirety with

the end in view of seeking to harmonize and to give effect to all provisions so that none

will be rendered meaningless.'"  Id. at 1283-84 (quoting Copper Mountain, Inc. v. Indus.

Sys., Inc., 208 P.3d 692, 697 (Colo. 2009) (internal quotation marks omitted)).

Ambiguous provisions are construed "against the insurer and in favor of providing

coverage to the insured."  Id. (quoting Cyprus Amax Minerals Co. v. Lexington Ins. Co.,

74 P.3d 294, 299 (Colo. 2003)).  Contract interpretation is a matter of law, appropriate for

summary judgment.  See Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am., 230 F.3d

1215, 1218 (10th Cir. 2000) (citing Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.,

917 P.2d 321, 323 (Colo. Ct. App. 1995)).

## C.      Whether Colorado Casualty had a duty to defend

The initial issue presented, which is dispositive of all of the summary judgment

motions, is whether Colorado Casualty owed a duty to defend Brock in the Athletica

Action.  "The existence of a duty to defend against a particular claim is a question of

law." Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co., 593 F.3d 1188, 1193 (10th Cir.

2010).  Under Colorado law,

> To analyze the insurer's duty to defend, we consider whether the factual
> allegations in the underlying complaint trigger coverage under an insurance
> policy's terms.  An insurer has a duty to defend where a complaint against
> its insured 'alleges any facts that might fall within the coverage of the
> policy," even if allegations only "potentially or arguably" fall within the
> policy's coverage. Hecla, 811 P.2d at 1089.  In Cyprus [Amax Minerals Co.
> v. Lexington Insurance Co.], we stated that the duty to defend is "designed
> to cast a broad net in favor of coverage" and that it must be construed
> "liberally with a view toward affording the greatest possible protection to
> the insured." 74 P.3d at 297.  An insurer seeking to avoid its duty to defend
> bears a "heavy burden."  Hecla, 811 P.2d at 1089.  In Hecla, we explained
> that this heavy burden "comports with the insured's legitimate expectation
> of a defense, and prevents the insurer from evading coverage by filing a
> declaratory judgment action."  Id. at 1090.

Thompson v. Maryland Cas. Co., 84 P3d. 496, 502 (Colo. 2004).  Whether the insured is

actually liable to the claimant is irrelevant to the duty to defend; what matters is whether

the "allegations in the complaint, . . . if sustained, would impose a liability covered by the

policy." Hecla, 811 P.2d at 1089.

Once a comparison of the pleadings and the policy establishes the duty to defend,

the insurer who seeks to avoid this duty must "establish that the allegations in the

complaint are solely and entirely within the exclusions in the insurance policy."  Id. at

1090.  "An insurer is not excused from its duty to defend unless there is no factual or

legal basis on which the insurer might eventually be held liable to indemnify the

insured."  Id. (emphasis added).  "In other words, the insured need only show that the

underlying claim may fall within policy coverage; the insurer must prove that it cannot."

Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 614 (Colo.1999) (internal quotation marks omitted).

> **1.     Relevant Policy language**

> **a.     Coverage**

The Policy is attached to Brock's Motion for Partial Summary Judgment (Doc. 8) as Exhibit B, part 2. (Doc. 8-4.)  Section I of the Policy contains coverages and exclusions.  The Policy provides "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  Id. Sec. I, ¶ 1(a).  "Property damage" includes

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. Sec. V, ¶ 17.

The policy further provides that coverage is available only if the damage is caused by an "occurrence."  Id. Sec. I, ¶ 1(b)(1).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Id. Sec. V, ¶ 13.

> **b.     Exclusions**

The Policy also includes several exclusions.  Colorado Casualty relies on two of them.  First, it relies on the "Products-Completed Operations Hazard Exclusion," which provides, in pertinent part: "This insurance does not apply to 'bodily injury' or 'property

damage' included within the 'products-completed operations hazard.'" Doc. 8-4 at 34.

The "products-completed operations hazard" is defined in relevant part to

> [i]nclude[] all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
>> (1) Products that are still in your physical possession; or
>>
>> (2) Work that has not yet been completed or abandoned [with additional explanation of what may constitute completion or abandonment].
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

Id. Sec. V, ¶ 16(a).

Second, Colorado Casualty relies on the "Impaired Property Exclusion,"

which provides:

> This insurance does not apply to:
>
>> . . . .
>
> **m.  Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
>> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>>
>> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Id. Sec. I ¶ 2(m).

> "Impaired property," in turn, is defined as

tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

> **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> **b.** Your fulfilling the terms of the contract or agreement.

<u>Id.</u> Sec. V ¶ 8.

"Your product" is defined in relevant part as "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . You . . . or Others trading under your name." <u>Id.</u> Sec. V, ¶ 21(a).  The definition also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of" "your product" or "your work," respectively. <u>Id.</u> Sec. V, ¶¶ 21(b), 22(b).

In broad terms, then, the Policy covers Brock's liability stemming from "property damage" that results from an "occurrence," unless (1) the property damage arises out of the insured's product, away from the insured's premises, unless the product is still in the insured's physical possession; or (2) the insured's defective product either damages otherwise non-injured property or renders other tangible property less useful, unless the damage arises out of a sudden and accidental physical injury to the insured's product once it is in use.

2.      **The allegations in the pleadings in the Athletica Action potentially state a claim that Brock is liable for "property damage" caused by "an occurrence"**

In the "Writ of Summons," the City's allegations were summary and directed to all the defendants together.  The City alleged that "the artificial turf sports field as designed constructed and installed" was defective, due to the defendants' "negligence and/or misrepresentation and/or breach of contract and/or breach of statutory duty."  Doc. 68-2 at 2.  The City alleged "damages including loss of use of the artificial turf and further particulars as shall be shown at trial."  Id. at 5.

In the "Amended Writ of Summons," the City provided more detailed factual allegations, and lodged specific claims against each defendant.  As to Brock, the City alleged, among other things, that Brock made certain warranties with respect to the Brockpad; that Brock breached its agreement with the City by providing a product that did not live up to the warranties; and, significantly, that Brock owed the City a duty to "ensur[e] that the Brockpad as designed, manufactured and installed, would not pose a risk to the health and safety of its users or any other persons or property," and that Brock breached that duty by failing to so ensure. Doc. 68-3 ¶¶ 57(g), 58(i).  As damages the City alleged various costs in connection with repairing the field, depreciation in the life expectancy and value of the field, loss of revenue, and "such other loss or damage as may be particularized before or at the trial of this action."  Id. ¶ 76.

In the "Further Amended Notice of Civil Claim," the City added to its allegations against Brock that Brock had made misrepresentations to the City in direct response to the City's concerns about the Brockpad; that the City had reasonably relied on those

misrepresentations; and that Brock had breached its duty of care by failing to conduct field reviews to "verify[] that the components used in the Project" were suitable.  Doc. 68-4 ¶¶ 59-61, 70(j).  The damages alleged were the same as in the Amended Writ of Summons.  Id. ¶ 88.

Finally, in the "Second Further Amended Notice of Civil Claim," the City altered its allegations with respect to Brock's alleged warranties, restyling them as claims for negligent misrepresentation, and included the breach of new alleged duties relating to the Brockpad's drainage capabilities.  Doc. 68-7 ¶¶ 61-64, 66(c), 66(h), 67(n). 23-26, 27, 28, 40.  Again, the damages alleged were the same as in the Amended Writ of Summons.  Id. ¶ 90.

The initial Writ of Summons contains no allegations of "property damage" or an "occurrence," and thus is inadequate to trigger Colorado Casualty's duty to defend. However, the Amended Writ of Summons contained allegations sufficient to state a claim against Brock for "property damage" caused by an "occurrence" as those terms are defined in the policy.  The Amended Writ of Summons alleges that Brock had a duty to "ensur[e] that the Brockpad would not pose a risk to the health and safety of its users or any other persons or property," and that Brock "fail[ed] to ensure that the Brockpad . . . would not pose a risk to the health and safety of its users or any other persons or property"  Doc. 68-3 ¶¶ 57(g),58(i).  Coupled with the City's allegations of "such other loss or damage as may be particularized before or at" trial, these allegations could fall within the Policy's general definition of "property damage."  They at least imply that the

Brockpad posed a risk of damage to other property and leave open the possibility that such damage will be proved.

The Amended Writ of Summons further alleged that Brock provided a deficient product, i.e., a product that "was not designed or manufactured in good and workmanlike manner, free from deficiencies." Doc. 68-3 ¶ 51(a). The Tenth Circuit, applying Colorado law, recently determined that "injuries flowing from improper or faulty workmanship constitute an occurrence so long as the resulting damage is to nondefective property." Greystone, 661 F.3d at 1284. And as just stated, the allegations at issue here at least potentially encompass damage caused by the Brockpad to other, nondefective property. Altogether, these allegations "potentially or arguably fall within the policy's coverage." Hecla, 811 P.2d at 1089 (internal quotation marks omitted). This, standing alone, would be sufficient to trigger Colorado Casualty's duty to defend.[4]

### 3.      The "Products Completed Operations Hazard Exclusion" applies

To avoid its duty to defend, Colorado Casualty relies on the "Products-Completed Operations Hazard Exclusion" and the "Impaired Property Exclusion." To prevail, however, "it need only be correct as to [either] one of them." Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1142 (10th Cir. 2005) (applying Colorado law). The "Products-Completed Operations Hazard Exclusion" applies to bar coverage for the claim. Accordingly, the Court does not evaluate the applicability of the "Impaired Property Exclusion."

---

[4] Nothing about the Further Amended Notice of Civil Claim or the Second Further Amended Notice of Civil Claim would alter this conclusion.

To reiterate, the Policy expressly excludes "property damage" that is included within the "Products-Completed Operations Hazard." The "Products-Completed Operations Hazard" includes

> "property damage" occurring away from premises you own or rent and arising out of "your product"[,] . . . except . . . products that are still in your physical possession."

Doc. 8-4 Sec. V ¶ 16(a).

Here, the allegations, if true, establish that any property damage occurred in Coquitlam, away from Brock's premises, that the property damage arose out of the Brockpad, which is Brock's "product," and that the Brockpad was not in Brock's physical possession, but rather was in the possession of Wilco and the other defendants who actually constructed the field. Therefore, the "Products-Completed Operations Hazard Exclusion" bars coverage of the City's claim against Brock.

Brock argues that if it had ultimately been found liable solely in its capacity as the "developer" of the Brockpad, then the Brockpad would not be Brock's "product" within the meaning of "your product." Doc. 75 at 22-25. Presumably Brock means that because it did not personally manufacture the Brockpad, but rather licenses the manufacture of the Brockpad to another company, it does not fall within the "Your product" definition because that definition does not include the verb "develop." This argument is unavailing. "Your product" includes "products . . . manufactured, sold, handled, distributed, or disposed of by . . . you [or] others trading under your name." Doc. 8-4 Sec. V ¶ 21(a). The Amended Writ of Summons alleges that Athletica "coordinated with Brock to provide the Brockpad," and that "Wilco contracted with . . . Brock to provide the

Brockpad" for the Project.  Doc. 68-3 ¶¶ 15-16.  Brock thus "distributed" the Brockpad. The fact that Brock licenses others to manufacture the Brockpad is immaterial.  To the extent that the Brockpad or "Brock Performance Base" is a licensed product sold under the Brock name, it is a product manufactured by "others trading under [Brock's] name" and thus falls within the definition of "your product."

In sum, the allegations in the Amended Writ of Summons were sufficient to establish the existence of covered "property damage" in the first instance, but those allegations also established that the property damage falls within the Policy's "Products-Completed Operations Hazard Exclusion."  Colorado Casualty, therefore, had no duty to defend Brock against the City's claims.

Because there was no duty to defend, there was also no duty to indemnify.  See Constitution Assocs. v. N.H. Ins. Co., 930 P.2d 556, 563 (Colo. 1996).  And because there was neither a duty to defend nor a duty to indemnify, Brock cannot recover on its claim that Colorado Casualty breached the insurance policy by failing to defend or indemnify Brock. [5]

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Colorado Casualty summary judgment and declares that it owed no duty to defend or indemnify Brock on the claims the City asserted against Brock in the Athletica Action.  For the same reasons, the Court

---

[5] Brock also alleged that Colorado Casualty breached the insurance contract by failing to "timely and reasonably investigate the claim."  Doc. 44 at 14.  But the Policy imposes on Colorado Casualty no contractual duty to investigate.  Instead, it states "We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." Doc. 8-4 at 16.

DENIES Brock summary judgment on its claim seeking a contrary declaratory judgment and on its claim alleging Colorado Casualty breached the insurance contract by failing to defend and indemnify Brock.  The Court instead GRANTS Colorado Casualty summary judgment on those two claims.  See 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2720 at 347 (3d ed. 1998) (noting "weight of authority . . . is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56"); see also Kannady v. City of Kiowa, 590 F.3d 1161, 1170 n.8 (10th Cir. 2010).

This decision resolves all pending claims except Brock's counterclaim alleging Colorado Casualty's bad-faith breach of the insurance contract by failing, in a timely and reasonably manner, to investigate Brock's insurance claim and to provide an explanation for its refusal to defend and indemnify Brock.  Neither party moved for summary judgment on that claim.

Therefore, the Court ORDERS as follows:

1.    Plaintiff Colorado Casualty's Cross-Motion for Summary Judgment (Doc. 68) is GRANTED.

2.    Defendant Brock's Motion for Summary Judgment on its declaratory judgment counterclaim and its breach-of-contract counterclaim (Doc. 49) is DENIED.

3.    Defendant Brock's Motion for Partial Summary Judgment (Doc. 8) is DENIED.

4.      The Court directs the parties, within five days of the date of this order, to

file a status report with Magistrate Judge Tafoya, pursuant to her order

staying discovery pending resolution of these summary judgment motions

(Doc. 59).

DATED:  this 26th day of September, 2012.

BY THE COURT:

*s/ David M. Ebel*

_____

David M. Ebel
United States Circuit Judge