# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 11-cv-02527-DME-KMT

COLORADO CASUALTY INSURANCE COMPANY,

      Plaintiff,

v.

BROCK USA LLC,

      Defendant.

---

### ORDER DENYING BROCK USA LLC'S MOTION FOR RECONSIDERATION

---

Before the Court is a Motion for Reconsideration ("Motion") (Doc. 83), filed by Defendant Brock USA LLC ("Brock") in response to the Court's order granting summary judgment to Plaintiff Colorado Casualty Insurance Company ("Colorado Casualty") (Doc. 79). Although the Court previously indicated to the parties that it anticipated a hearing would be necessary to resolve the issues Brock raises in its Motion, on further consideration, the Court has determined that a hearing would not materially assist it in resolving the dispute. For the reasons discussed below, the Court DENIES Brock's Motion.

# I.    STANDARD OF REVIEW

The Court's Order Granting Summary Judgment on Plaintiff's Claim and on Two

of Three of Defendant's Counterclaims (the "Order") was a non-final ruling because it

did not dispose of all of Brock's counterclaims.  See Rodeman v. Foster, 767 F. Supp. 2d

1176, 1188 (D. Colo. 2011).  When addressing a motion for reconsideration in this

procedural posture, the Court is "not bound by the strict standards for altering or

amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)."

Id. (quoting Fye v. Okla Corp. Comm'n, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008)); see

also Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims . . .

does not end the action as to any of the claims . . . and may be revised at any time before

the entry of a judgment adjudicating all the claims . . . .").  Instead, Brock's Motion

"invok[es] the district court's general discretionary authority to review and revise

interlocutory rulings prior to entry of final judgment."  Wagoner v. Wagoner, 938 F.2d

1120, 1122 n.1 (10th Cir. 1991).

Nevertheless, even in the interlocutory-order context, "[a] party's failure to present

his strongest case in the first instance does not entitle him to a second chance in the form

of a motion [for reconsideration]."  Renfro v. City of Emporia, Kan., 732 F. Supp. 1116,

1117 (D. Kan. 1990) (internal quotation marks omitted).  Indeed, although judges are

"not necessarily required to do so," they commonly circumscribe "their broad discretion

to revisit interlocutory orders . . . by incorporating . . . analyses" from Rules 59 and 60

and the law of the case doctrine.  United Fire & Cas. Co. v. Boulder Plaza Residential,

LLC, No. 06-CV-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010)

(unreported), aff'd, 633 F.3d 951 (10th Cir. 2011); accord Beat v. United States, 08-1267-JTM, 2011 WL 1375290, at *7 (D. Kan. Apr. 12, 2011) (unreported) (same).

Mindful of these principles, this Court will not alter its previous Order unless "new evidence or legal authority has emerged or . . . the prior ruling was clearly in error." Rodeman, 767 F. Supp. 2d at 1189; accord Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (holding that, under a Rule 59(e) motion, relief is only "appropriate where the court has misapprehended the facts, a party's position, or the controlling law"; such a motion is not a vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing").

## II.    DISCUSSION

In its earlier Order, this Court ruled (1) that in the underlying civil action between the City of Coquitlam, British Columbia (the "City") and Brock, et. al (the "Athletica Action"), the City's allegations in the final three amended versions of its complaint (the "Complaint") potentially stated a claim that Brock was liable for "property damage" caused by an "occurrence" as those terms are defined under four materially identical commercial general liability ("CGL") policies (the "Policy") that Colorado Casualty issued to Brock; and (2) that standing alone, those allegations would have been sufficient to trigger Colorado Casualty's duty to defend Brock in the Athletica Action; but (3) that the "Products-Completed Operations Hazard Exclusion" (the "PCOH Exclusion" or "Exclusion") applied to bar coverage, and so Colorado Casualty had no duty to defend Brock in the Athletica Action.

In its Motion, Brock advances two arguments in support of its claim that the Court erred when it concluded that the PCOH Exclusion obviated coverage in this case.  First, Brock argues that "the pleadings contain allegations that Brock was involved in the installation of the Brockpad," and that "such allegations, coupled with allegations that the damage occurred prior to the field's completion, trigger the exception to the Products Completed Operations Hazard Exclusion for 'work that has not yet been completed or abandoned.'"  Doc. 83 at 2.  Second, Brock claims that "the real property exception to the definition of 'your product' applies and prevents coverage from being defeated by the Products Completed Operations Hazard Exclusion."  Id.  The Court addresses each argument in turn.

## 1.   The Court declines to consider Brock's first argument, which Brock did not raise before the Court issued its Order

In their cross-motions for summary judgment, Brock and Colorado Casualty hotly disputed the applicability of the PCOH Exclusion to the facts of this case.  To reiterate, the Exclusion states that "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'"  Doc. 8-4 at 34.  The "products-completed operations hazard" is defined in relevant part to

> [i]nclude[] all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned [with additional explanation of what may constitute completion or abandonment].
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

Id. at 30, Sec. V, ¶ 16(a).

In response to the arguments raised in the parties' cross-motions, which focused exclusively on the PCOH Exclusion's "your product" prong, the Court determined that the allegations in the Complaint,

> if true, establish that any property damage occurred in Coquitlam, away from Brock's premises, that the property damage arose out of the Brockpad, which is Brock's "product," and that the Brockpad was not in Brock's physical possession, but rather was in the possession of Wilco and the other defendants who actually constructed the field.  Therefore, the "Products-Completed Operations Hazard Exclusion" bars coverage of the City's claim against Brock.

Order at 14.  Brock now argues that in addition to alleging "property damage" arising out of "your product," the Complaint "contains allegations that Brock was involved in the installation of the Brockpad at Percy Perry Field, not merely for providing a defective product."  Doc. 83 at 5 (emphasis added).  Therefore, Brock claims, the Complaint alleged "property damage" arising out of "[your] work" as "the project was nearing completion," and the "Court [was] obligated to consider these allegations in determining whether Colorado Casualty had a duty to defend."  Id. at 6 (emphasis added).

Regardless of any potential merit to Brock's argument that the Complaint alleged "property damage" arising out of "your work" that triggered the exception restoring coverage for "[w]ork that has not yet been completed," Brock never raised such a claim before the Court issued its Order, and so the Court declines to consider it now.  See Servants of Paraclete, 204 F.3d at 1012 (admonishing that a motion for reconsideration is not the appropriate forum to first "advance arguments that could have been raised in prior

briefing"). Indeed, while it was Colorado Casualty's "heavy burden" to "establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy," Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089-90 (Colo. 1991), that burden did not absolve Brock of the responsibility to refute Colorado Casualty's viable arguments that the Exclusion obviated coverage. To rule otherwise would effectively place the onus on the Court to imagine scenarios that might fall outside of the exclusion to coverage that Colorado Casualty invoked. And "[i]t is not this court's task to comb through" the Policy and the Complaint "in an effort . . . to construct Plaintiff's arguments for him." See Barcikowski v. Sun Microsystems, Inc., 420 F. Supp. 2d 1163, 1179 (D. Colo. 2006); accord Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000) ("To do so would not only consume an inordinate amount of time, but would result in [this Court's] abandoning [its] neutrality and becoming [an] advocate[] in the adversarial process.").

Brock claims that it did argue, "at pages 29-30 of its Consolidated Reply," that "th[e] exception [for 'work that has not yet been completed'] applied" to restore coverage in this case. Doc. 83 at 6 n.4; accord Doc. 89 at 5. To reiterate, where the complaint alleges "property damage" arising out of "your product" or "your work" and occurring away from "premises you own or rent," there are two exceptions to the Exclusion which, if applicable, result in coverage: First, coverage applies where the property damage alleged arises out of "your product," and "your product" is still in "your physical possession"; and second, coverage applies where the property damage alleged arises out

of "your work," and "your work" is "[w]ork that has not yet been completed."  Doc. 8-4 at 30, Sec. V, ¶ 16(a).

Based on the context in which Brock's claim appeared, however, the Court reasonably understood Brock's argument to be that even if the Court determined that the Brockpad qualified as "<u>your product</u>," the exception for "[w]ork that has not yet been completed" applied to restore coverage because the field had not yet been completed. The Court rightly rejected that argument: the structure of the PCOH Exclusion makes clear that the exception restoring coverage for "[w]ork that has not yet been completed" applies only to allegations in a complaint implicating the "your work" prong of the Exclusion.  In the portion of Brock's Consolidated Reply cited, Brock never suggested that the Complaint alleged "property damage" arising out of "<u>your work</u>," as would have been necessary to trigger the exception.  <u>See</u> Doc. 75 at 29-30; <u>see also</u> <u>id.</u> at 23 n.10 ("[T]he underlying complaints do not unambiguously allege that Brock was responsible for the installation.  Indeed it was not.  The [Complaint] alleges that <u>Wilco</u> agreed to install the Brockpad . . . and that it breached its agreement by negligently installing the Brockpad." (emphasis added)).

In sum, because Brock never previously raised the argument that the Complaint alleged damages arising out of "your work" that fell within the corresponding exception to the PCOH Exclusion, the Court's "prior ruling was [not] clearly in error," <u>see</u> <u>Rodeman</u>, 767 F. Supp. 2d at 1189, and the Court declines to consider the merits of that

claim, which easily "could have been raised in prior briefing,"[1] <u>Servants of Paraclete</u>, 204

F.3d at 1012.

### 2.   The Brockpad does not fall within the "real property" exception to the definition of "your product" for purposes of the PCOH Exclusion

The Policy's PCOH Exclusion obviates coverage for off-premises "property

damage" arising out of "your product" which has left "your physical possession."  Doc.

8-4 at 30, Sec. V, ¶ 16(a).  In turn, the Policy defines "your product" as "[a]ny goods or

products, <u>other than real property</u>, manufactured, sold, handled, distributed or disposed of

by . . . [y]ou . . . [or o]thers trading under your name."  <u>Id.</u> Sec. V, ¶ 21(a) (emphasis

added).  In this case, the Complaint alleges that "as a result of," inter alia, defects in the

Brockpad,[2] the field was damaged.  <u>See</u> Doc. 68-3 at 29, ¶¶ 51-52.  But Brock argues that

"the [PCOH] Exclusion does not apply because the Brockpad became part of real

---

[1] The Court also notes incidentally that Colorado Casualty expressly denied that the Complaint contained allegations implicating "[Brock's] work" in its Reply in Support of Cross-Motion for Summary Judgment.  <u>See</u> Doc. 78 at 8.  More than three months passed between when Colorado Casualty submitted its Reply and when this Court issued its Order, which gave Brock "plenty of opportunity to seek leave of the court to file a surreply" refuting that argument, but Brock "never attempted to do so" until now.  <u>See</u> <u>Pippin v. Burlington Res. Oil And Gas Co.</u>, 440 F.3d 1186, 1192 (10th Cir. 2006).

[2] The Brockpad material is "[Brock's] product."  Order at 14-15 (observing that allegations in the Complaint established that the Brockpad fell within the Policy's definition of "your product" because Brock "distributed" the Brockpad and licensed it to "[o]thers trading under [Brock's] name"); <u>accord</u> <u>Bituminous Cas. Corp. v. St. Clair Lime Co.</u>, No. 94-6436, 1995 U.S. App. LEXIS 30948, at *14 (10th Cir. Oct. 27, 1995) (noting that courts have traditionally defined "products" for purposes of PCOH provisions as the "goods or services which the insured deals in as his stock or trade").

property once it was incorporated into the field and thus falls outside the definition of 'your product.'"[3]  Doc. 83 at 7.  This argument lacks merit.

The text of the PCOH Exclusion, which obviates coverage for "property damage" arising out of "your product" after it leaves "your physical possession," Doc. 8-4 at 30, Sec. V, ¶ 16(a), reflects the parties' intent to addresses "the risk that the product . . . , if defective, may cause bodily injury or damage to property of others after it leaves the insured's hands," Baker v. Nat'l Interstate Ins. Co., 103 Cal. Rptr. 3d 565, 579 (2009) (internal quotation marks omitted) (emphasis added), or the hands of "others trading under [the insured's] name," see 58 A.L.R.3d 12 n.3.  Here, Brock opted not to insure against that risk, and it thereby avoided incurring "an additional hefty premium, [by way of] products-completed operations hazard coverage."  See Baker, 103 Cal. Rptr. 3d at 579 (internal quotation marks omitted) (emphasis added).  Instead, the Policy expressly excludes such coverage by way of the PCOH Exclusion.

Nevertheless, Brock seeks to circumvent its coverage choice by construing the PCOH Exclusion to create a sort of long-term coverage: Brock effectively argues that the PCOH Exclusion obviated coverage only for the brief time between when the Brockpad left Brock's (or its licensee's) physical possession and when the Brockpad was installed in the field.  This construction of the PCOH Exclusion is inconsistent with its text, which obviates coverage for off-premises "property damage" arising out of "your product"

---

[3] Brock also advanced this argument in its Consolidated Reply, see Doc. 75 at 27-29, but the Court did not address it directly.  Nothing about the following discussion alters the Court's earlier ruling.

which has left "your physical possession."  Such a construction does not comport with "the intent and reasonable expectations of the parties," Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 808 (10th Cir. 2009), and the Court rejects it.

The cases Brock cites in support of its claim counsel no different conclusion. Each of those cases analyzes a different CGL provision, which excludes from coverage "'property damage' to 'your product' arising out of it or any part of it." Auto-Owners Ins. Co. v. Am. Bldg. Materials, Inc., 820 F. Supp. 2d 1265, 1272 (M.D. Fla. 2011) (alteration omitted) (emphasis added); accord Stuart v. Weisflog's Showroom Gallery, Inc., 753 N.W.2d 448, 463 (Wis. 2008); Cincinnati Ins. Co. v. Fab Tech, Inc., No. CIV.03-CV-410-SM, 2005 WL 1492377, *5 (D.N.H. June 24, 2005); Scottsdale Ins. Co. v. Tri-State Ins. Co. of MN., 302 F. Supp. 2d 1100, 1104 (D.N.D. 2004); Wanzek Const., Inc. v. Emp'rs Ins. of Wausau, 679 N.W.2d 322, 326-28 (Minn. 2004).  These cases collectively stand for the proposition that once materials that were once "your product" have been incorporated into real property, damage to the resultant real property does not constitute damage to "your product." See, e.g., Auto-Owners Ins. Co., 820 F. Supp. 2d at 1272 ("[B]ecause the ABM drywall became 'real property' once it was installed, it is not within the definition of 'your product' under the policy.").

Importantly, unlike the damages discussed in the cases Brock cites, the alleged defects in the Brockpad existed before the Brockpad became real property, when the Brockpad was indisputably "[Brock's] product."  Thus, the damages alleged in the Complaint "ar[ose] out of" "[Brock's] product."

10

### III.    REMAINING ISSUE

The Court notes that there is one remaining issue in this case for bad faith breach of contract.  There is at least a possibility that the court's rulings to date might impact upon that issue.  The parties have indicated that they may jointly ask for an order of certification from the Court's rulings.  The parties are asked to consider whether it would be more expeditious for them to agree jointly to a disposition of this remaining claim, so that any appeal will present to the appellate court the entire case.

### IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Brock's Motion for Reconsideration.

DATED:  this 28th day of August, 2013.

BY THE COURT:

*s/ David M. Ebel*

_____
David M. Ebel
United States Circuit Judge